UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **MARGARET ALLEN,** | **CASE NO. C-1-02-412** |
| **PLAINTIFF** | **(WEBER, J.)** |
| | **(HOGAN, M.J.)** |
| VS. | |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA,** | |
| **DEFENDANT** | |

### REPORT AND RECOMMENDATION

Before the Court are Defendant Unum Life Insurance Company of America's (UNUM) Motion for Judgment on the Administrative Record (Doc. 11), Plaintiff's Brief (Doc. 12), Defendant's Brief in Opposition (Doc. 15) and Plaintiff's Reply (Doc. 14). Also before the Court are the parties' supplemental memoranda. (Docs. 24, 26). For the reasons which follow, Defendant's Motion for Judgment should be granted.

### BACKGROUND INFORMATION

Plaintiff, age 51, was employed as a business analyst by Applied Integration Services, Inc. and had been so employed since May, 1998. Prior to Plaintiff's employment, her employer obtained long-term disability coverage from Defendant Unum. It is undisputed that Plaintiff was a covered person under Unum's disability policy No. 514735002. Whether Plaintiff met the contractual conditions of the policy is, of course, the major dispute in this case. Plaintiff claims she did; Unum believes otherwise. The dispute in this ERISA case is not whether Plaintiff had Meniere's disease, but whether or not the disease entitled her to long-term benefits under Unum's policy. Plaintiff left work in August, 1999 due to chemical dependency and depression and received benefits for approximately one year, the maximum amount permitted by the Plan for mental disorders. Plaintiff then sought benefits for a physical disorder, Meniere's disease, a disorder involving the inner ear, which produces the symptoms of dizziness, tinnitus (ringing in the ear) and often involves a hearing

loss. Benefits were awarded for a twelve-month period from March, 2000 to March, 2001 pursuant to the Mental Illness provisions of the policy, and for a closed period of approximately nine additional months for the claimed physical disability, but long-term benefits were denied, and in December, 2001, Plaintiff's benefits ceased. This litigation followed. There is no dispute in this case that this Court's decision should be made on the basis of the Administrative Record as it existed when the claim for benefits was denied. See *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376 (6th Cir. 1996).

## THE PROPER STANDARD OF REVIEW

Many plaintiffs urge that the Court should review the Administrative Record in a *de novo* fashion. This fact is not surprising and is a request made by many plaintiffs in like circumstances. Having failed to prevail at the administrative level, the typical plaintiff is hardly in a position to request the *arbitrary and capricious* standard of review, which is far more deferential. However, because the Long Term Disability Plan requires the plan administrator to determine whether or not the applicant is "limited from performing the material and substantial duties of {her} occupation due to {her} sickness or injury and whether or not {Plaintiff has} a 20% or more loss in {her} indexed monthly earnings due to the same sickness or injury," Plaintiff concedes that the *arbitrary and capricious* standard is appropriate. A decision is not *arbitrary and capricious* if there is a reasonable outcome supported by the evidence. See *Perry v. United Food & Commercial Workers Union*, 64 F.3d 238 (6th Cir. 1995). A decision is not *arbitrary and capricious* if it is the result of a deliberate principled reasoning process and if it is supported by substantial evidence. See *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140 (6th Cir. 1991).

## PLAINTIFF'S ARGUMENT

In urging us to hold that Unum's decision to deny Plaintiff long-term disability benefits was arbitrary and capricious, Plaintiff makes the following arguments: (1) Unum's claims review personnel disagree with the decision made by the Plan administrator, (2) "Plaintiff was having severe difficulty in being able to function in five of the fifteen major areas," (3) There was confusion among Unum employees as to the condition(s) for which the disability benefit was being processed, (4) Unum failed to have Plaintiff examined by an independent medical examiner, but relied on its own staff, (5) The

2

claims file lacks information about Meniere's disease, (6) the record contains no statement of the qualifications of the medical professionals who examined the medical records as to their knowledge or lack thereof of Meniere's disease, (7) Plaintiff's treating physician, Gale W. Miller, M.D., confirmed the diagnosis of Meniere's disease and considered Plaintiff "totally and permanently disabled," and (8) the diagnosis was supported by the opinion of Ann Pidgeon, R.N., a member of Defendant's Clinical Research Department.

## OPINION

With reference to Plaintiff's first point, Defendant asserts that Plaintiff made claims under two different policies, an Accidental Death and Dismemberment Policy, under which Unum approved Plaintiff's request for premium waivers in June, 2001 and February, 2002 because of a disabling psychiatric condition, and the long-term disability policy, under which Plaintiff made her physical disability claim. The latter policy has a 12-month limitation for disabilities related to psychiatric disorders, but the former has no such temporal limitation with respect to premium waivers. Defendant argues, and we agree, that meeting the conditions required for a premium waiver relative to the life policy does not establish the criteria for receiving benefits under the disability policy. Thus, we don't believe that Plaintiff's first argument has any merit.

We assume Plaintiff's second point refers to a Functional Capacities Evaluation Form, completed by Edwin R. Larson, M.D., a psychiatrist, in February, 2002. Dr. Larson rated as "Severe," meaning 'extreme impairment of ability to function" in six, rather than five areas: (1) ability to understand, carry out and remember instructions, (2) ability to perform work requiring regular contact with others, (3) ability to perform intellectually complex tasks requiring higher levels of reasoning, math and language skills, (4) ability to perform varied tasks, (5) ability to supervise or manage others and (6) ability to perform under stress when confronted with emergency, critical, unusual or dangerous situations in which working speed and sustained attention are make or break aspects of the job. It would not be irrational to conclude that Dr. Larson's opinion relates to Plaintiff's psychiatric condition and not to any physical disability, and certainly not to Meniere's disease. Again, this argument fails to convince us that the Plan administrator went astray.

Plaintiff's third argument refers to Document UACL 00719, an internal Unum document in which the reviewer, after listing various facts in bullet point fashion, indicated that Plaintiff's claim

was initially approved under the Mental Illness provisions of the policy, but requesting further "investigation," since additional medical information was provided on the diagnosis of Meniere's disease. Plaintiff asserts that no "investigation" was even conducted. However, Documents CL-00003, CL-000007-10, CL-00179-000183, CL-00186-00198 and CL-00201-00203 would support the opposite conclusion. In addition, Plaintiff's application for benefits due to a physical disability was subsequently approved for a closed period of more than nine months. This argument has no merit.

It is true that Defendant did not require Plaintiff to submit to an independent medical examination. Two points need to be made here. First, the policy does not require Defendant to make the suggested request for such an examination. Second, the burden of proof is on the Plaintiff to demonstrate compliance with policy requirements, not the other way around. Failure to obtain an opinion from an independent physician does not support a claim that Defendant's benefits decision was arbitrary or capricious. See *Jackson v. Metropolitan Life Insurance Co.*, 2001 WL *1450811 (6th Cir. 2001). This argument also lacks merit.

Plaintiff next contends that the claims file lacks information about Meniere's disease. Presumably, Plaintiff is arguing that the claims file lacks information relative to the extension of benefits beyond the approximately nine-month closed period for which benefits were paid. Again, the Administrative Record does not support such an allegation. See CL-00186-00189, CL-00100-00103, CL-00095-00098, CL-00166-00167 and CL-00179-00183.

The argument is next advanced that there is no proof that the medical professionals who examined Plaintiff's medical records were qualified to do so. It is in this context that we shall discuss Plaintiff's remaining objections to the decision of the plan administrator to deny benefits. Insofar as the Meniere's issue is concerned, Plaintiff presented the medical records of Drs. Miller, Baluyot and Brown. Defendant relied upon Nurse Ann Pidgeon and Maureen Lee, D.O. Dr. Brown is Plaintiff's primary care physician. Gayle Miller, M.D. and Sabino Baluyot, M.D. are E.N.T. specialists and it is common knowledge that Meniere's disease is an inner ear disorder. Dr. Lee is an internist as is Dr. Brown. Although this Court could locate no curriculum vitae for any of the medical experts who voiced an opinion is this case, it is assumed that their letterheads are not fraudulent and that each would be competent to voice a view on the nature and extent of the medical problem for which Plaintiff seeks benefits and about which they were consulted. Of particular significance to this Court is the fact that Plaintiff's application for benefits relating to Meniere's disease was denied, at least in

part, on the basis that she was not under the regular care of a physician for treatment of Meniere's disease, a fact that could be determined from the medical records themselves, independent of any expert testimony.

The second basis for the denial was that "Plaintiff did not present sufficient evidence of restrictions and limitations based on her claimed physical condition that would preclude Plaintiff from performing the duties of her occupation." Although "regular care" is defined in the policy as meaning receipt of "the most appropriate treatment and care, which conforms with generally accepted medical standards," Defendant requested and obtained Dr. Lee's opinion on that subject and she opined that "I would anticipate that claimant would be seen at least monthly for evaluation of symptoms that could be severe enough to impact upon her work capacity." Since Dr. Miller's treatment notes indicate no office visits between late August, 2001 until January, 2002 and since the only treatment recommended by Dr. Miller was surgery, a recommendation that was not accepted by Plaintiff, Defendant denied the claim on the basis that Plaintiff failed to present sufficient evidence of restrictions and limitations that would preclude her from performing work. Although this is a decision that could be questioned on the merits because Ms. Pigeon confirmed the diagnosis and Dr. Miller opined that Plaintiff was permanently disabled due to Meniere's, it cannot be concluded that the decision was arbitrary and capricious because it is rationally based. There was a gap in treatment, which might be explained if no other treatment other than surgery was available, but when the claimant declines surgery *and* fails to maintain regular contact with the physician, then an inference arises that is neither arbitrary nor capricious and that is that Plaintiff's subjective reports to her physicians were exaggerated. That Plaintiff violated her physician's directions not to drive an automobile simply adds further support to Defendant's position in this case.

That Plaintiff suffers from Meniere's disease was confirmed and is not subject to reasonable debate. That the disease from which she suffers is disabling is disputed. The plan administrator's decision that plaintiff's condition is not disabling is supported by the four-volume Administrative Record.

### JUDICIAL ESTOPPEL

The Court permitted additional briefing on the question of judicial estoppel. Both parties submitted additional briefs on the subject. (See Docs. 24 and 26). In addition to the claim made to

Unum, Plaintiff also applied for Social Security disability benefits and was awarded same for a period beginning on August 27, 1999. Although the Administrative Law Judge found that Plaintiff suffered from severe impairments of Meniere's disease (resulting in "daily dizziness,") major depression and alcohol abuse, the Administrative Law Judge found the Plaintiff's mental impairments to be "of greater significance." Finally, the Administrative Law Judge found that Plaintiff met Listing 12.04, which deals with affective disorders.

When Plaintiff applied to Unum for disability benefits, she was informed that she was required to apply for similar benefits through the Social Security Administration and that if Social Security approved her claim, her Unum benefits would be reduced by the amount of her Social Security payment after a five-month period. When Social Security denied Plaintiff's initial claim, Unum referred her to Genex Services, Inc., a Social Security Disability Program. An attorney secured through Genex processed Plaintiff's request for reconsideration and handled her case up to, but not including, the hearing before the Administrative Law Judge. In her request for reconsideration, Plaintiff reported her limitations as "depression, ADD, Meniere's disease and chemical dependency." As previously stated, the Administrative Law Judge's disability finding was based primarily on Plaintiff's mental, not physical, impairments.

Plaintiff argues that because Defendant referred her to Genex for the purpose of processing a Social Security claim, thereby potentially reducing its own exposure to make disability payments, and because the application for Social Security benefits was based, at least in part, on Plaintiff's diagnosis of Meniere's disease, Defendant should be estopped from asserting the position it has taken in this case, that Plaintiff is not disabled because of Meniere's disease. As further evidence that Defendant is taking an inconsistent position in this case, Plaintiff argues that Genex submitted the medical records of Dr. Gale Miller to the Social Security Administration as evidence that Plaintiff was disabled because of Meniere's disease and then Defendant denied Plaintiff's disability claim on the basis that Dr. Miller's records were deficient. In asserting her position, Plaintiff relies upon *Ladd v. ITT Corp.*, 148 F.3d 753 (7th Cir. 1998), about which we shall comment momentarily.

Defendant asserts that the criteria for obtaining Social Security benefits and Unum disability benefits differ. Defendant Unum further argues that the conclusion of the Administrative Law Judge, and accordingly, the Administration, was that Plaintiff was disabled for reasons other than Meniere's disease. Next, Defendant argues that it never represented to the Social Security Administration that

Plaintiff was disabled solely because of Meniere's disease. Finally, Defendant argues that the relevant time period during which Plaintiff claimed to be disabled because of Meniere's disease is after December 31, 2001, a period 28 months later than the onset of Plaintiff's Social Security disability.

Under the doctrine of judicial estoppel, a party who prevails in a law suit on one ground cannot in a subsequent case with the same opponent repudiate that ground. A repeating litigant, in other words, must adopt consistent positions. In the cited case, Ms. Ladd claimed disability under a plan provided by ITT Corporation, her employer, and administered by MetLife. MetLife, as in the instant case, encouraged Ms. Ladd to apply for Social Security disability and provided her with legal representation. As in the instant case, MetLife was entitled to offset benefits received under the ITT plan with any benefits received from Social Security. As in the instant case, Ms. Ladd was awarded Social Security benefits, but on combined impairments related to cerebral discs, carpal tunnel syndrome, insulin-dependent diabetes and obesity. MetLife than denied Ms. Ladd's disability claim. The *Ladd* Court first addressed the obvious problem with an argument based on judicial estoppel- the parties to the Social Security proceeding and the parties to the disability plan proceeding were not the same. The Court explained:

> The doctrine is technically not applicable here, because MetLife and ITT, the defendants in this suit, were not parties to the proceeding before the Social Security Administration. Yet they "prevailed" there because the grant of social security benefits to Ladd reduced the amount of her claim against the employee welfare plan. If we were to reflect on the purpose of the doctrine, which is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant . . . we see that its spirit is applicable here. To lighten the cost to the employee welfare plan of Ladd's disability, the defendants encouraged and supported her effort to demonstrate total disability to the Social Security Administration, going so far as to provide her with legal representation.

The Circuit found MetLife's denial of Ladd's benefits to be arbitrary and capricious because

the defense-retained medical expert, who never examined Ladd, but who found she could perform sedentary work, recommended an independent examination by a neurosurgeon, a recommendation ignored by MetLife. The Circuit found that no examining physician, including MetLife's physician, believed that Ladd was capable of working. Thus the Circuit's decision in *Ladd* was not grounded on the judicial estoppel argument. The Circuit referred to MetLife's conflicting positions as casting "additional doubt on the adequacy of their evaluation of Ladd's claim even if it does not provide an independent basis for rejecting that evaluation." Thus, the Circuit's comments regarding judicial estoppel in *Ladd* are simply dicta. Further, the Circuit recognized that absent the valid ground upon which the Trial Court was reversed, the "judicial estoppel" argument would not support a reversal. Lastly, adopting a position, which Unum did in the former proceeding, that Plaintiff was disabled as a result of a combination of impairments, both mental and physical, is not inconsistent with the position asserted in the present proceeding, that Plaintiff is not disabled solely because of a physical impairment.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendant's Motion for Judgment on the Administrative Record (Doc. 11) be granted and that this case be terminated on the docket of the Court.

                                                    s/Timothy S. Hogan
                                                    Timothy S. Hogan
                                                    United States Magistrate Judge

J:\HOGANTS\Unum 02-412.wpd

**MARGARET ALLEN,**  CASE NO. C-1-02-412
    **PLAINTIFF**  (WEBER, J.)
  (HOGAN, M.J.)
**VS.**

**UNUM LIFE INSURANCE
COMPANY OF AMERICA,**
    **DEFENDANT**

# NOTICE

Attached hereto is the Report and Recommended decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on            . Any party may object to the Magistrate's findings, recommendations, and report within (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge, and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made along with a memorandum of law setting forth the basis for such objection, (such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.