03 SEP 15 PM 3: 31

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **MARGARET ALLEN** | * | **CASE NO. C-1-02-412** |
| **Plaintiff** | * | |
| -vs- | * | **Judge Weber** |
| | * | **Magistrate Sherman** |
| **UNUM INSURANCE** | * | |
| **Defendant** | * | |

---

## PLAINTIFF'S OBJECTION TO REPORT OF MAGISTRATE
## F.R.C.P. 72(b)

---

Now comes Plaintiff, MARGARET ALLEN, by and through the undersigned counsel, and hereby objects to the report of Magistrate M.J. Hogan of September 5, 2003 in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. In support of this objection, Plaintiff respectfully suggests that the Magistrate has erred in the following respects:

1.     The Magistrate erred by determining that the decision of Defendant to deny Plaintiff's claim is supported by the record;

2.     The Magistrate erred by determining that Plaintiff failed to maintain regular contact with her treating physician;

3.     The Magistrate erred by relying on the reports of Defendant's reviewing health care providers; and

4.     The Magistrate erred by determining that the doctrine of judicial estoppel is inapplicable to the case at bar.

A memorandum in support of this Objection is attached herewith.

Respectfully submitted:

RICHARD B. REILING (#0066118)
111 West First St., Suite 1000
Dayton, OH 45402
(937) 222-1148
Attorney for Plaintiff

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

## MEMORANDUM

As the Magistrate notes in his subject report, the above issues have been briefed in this case in some length.  In support of Plaintiff's Objections, Plaintiff incorporates the arguments contained in the following documents as if fully rewritten hereunder:

1.    Plaintiff's Brief of  February 7, 2003, attached herewith as Exhibit "A";

2.    Plaintiff's Reply Brief of February 19, 2003, attached herewith as Exhibit "B"; and

3.    Plaintiff's Supplemental Memorandum in support of Judgment in Favor of Plaintiff, attached herewith as Exhibit "C";

In addition to the foregoing, Plaintiff has, by separate motion, requested additional time[1] to supplement these objections upon receipt of a transcript of the oral arguments held in June 2003.

Based on the foregoing, Plaintiff respectfully objects to the subject report and prays that judgment be entered in favor of Plaintiff.

Respectfully submitted:

RICHARD B. REILING  (#0066118)
Walsh & Reiling
111 West First St., Suite 1000
Dayton, OH 45402
(937) 222-1148
Attorney for Plaintiff

## CERTIFICATE  OF  SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiff's Objection has been served upon Bret K. Bacon and Michael J. Holleran, counsel for Defendant, at 55 Public Square Bldg., 19th Floor, Cleveland, OH 44113, by First Class U.S. Mail, postage prepaid, this 15th day of September 2003.

RICHARD B. REILING  (#0066118)

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

[1] Magistrate Hogan's decision was received by Plaintiff about September 11, 2003.  Plaintiff's attorney is in the process of bringing this office into compliance with the electronic filing requirements, and did not receive a copy of the Magistrates decision electronically.

# FILED

FEB 0 7 2003

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARGARET ALLEN | : | CASE NO. C-1-02-412 |
| Plaintiff, | : | JUDGE WEBER |
| v. | : | MAGISTRATE SHERMAN |
| UNUM INSURANCE | : | |
| Defendant. | : | |

## PLAINTIFF'S BRIEF

Now comes the Plaintiff, Margaret Allen, by and through the undersigned Counsel, and for her brief herein states and avers as follows:

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

# EXHIBIT "A"

## I.    FACTUAL BACKGROUND

The Plaintiff, Margaret Allen, brings the instant action, based upon UNUM's failure to pay Plaintiff benefits she is due and owing under her employers Long Term Disability Plan (hereinafter LTD Plan).

Plaintiff was employed by Applied Integration Services, Inc. In March of 1997, Applied Integration Services Inc., contracted with UNUM to provide both Long Term and Short Term Disability Benefits for certain of its employees.  Additionally, at the same time, Applied Integration Services Inc. contracted with UNUM to provide Life Insurance and Accidental Death and Dismemberment Insurance Plans for certain of its employees.

Plaintiff was hired on May 28, 1998, by Applied Integration Services.  At the time Plaintiff went on disability leave she was working as a Business Analyst.  Plaintiff originally sought treatment for substance abuse in March of 1999.  Plaintiff continued to work through August 1999, when she was unable to continue to work due to her Chemical dependency. (UACL 00719, attached)  When Plaintiff attempted to stay sober, she could not handle the depression that followed.  (Id.)  A medical review conducted by UNUM showed that Plaintiff had been hospitalized six (6) times between July 1999 and July 2000, for substance abuse and that each time major depression was noted.  (Id.)  UNUM did no further review to determine whether or not Plaintiff's disability was physical or psychological.

Plaintiff after her last hospitalization continued to have problems with depression. Additionally, her treating physician noted that Plaintiff had significant problems with concentration and memory that impaired her ability to work.  Plaintiff was put on restrictions and limitations.  Plaintiff's treating physician, when filing out FCE's for UNUM, noted that

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

2

Plaintiff had a GAF of 52, and was severally limited in five out of fifteen functional areas. (UACL 00611 – UACL 00613, attached).

Plaintiff originally applied for disability based upon Chemical dependency and depression. Plaintiff received long term disability benefits for these conditions for approximately twelve months. Plaintiff received these benefits from approximately March 17, 2000 through March 16, 2001. (Id.) After that time period, UNUM denied Plaintiff further benefits for this condition, stating that the plaintiff was only entitled to twelve months of payment under the Mental Illness provisions of the LTD Plan. Plaintiff, even after having her claim denied based upon these conditions continued to seek treatment. Plaintiff's treating physician placed Plaintiff on such restrictions as to precludes Plaintiff from working.

In approximately November 2000, Plaintiff reported symptoms to her primary care physician, such as dizziness, balance problems, ringing and fullness in her right ear. (UACL 00527 – UACL 00532, attached.) Dr. Glen Miller, noted in a letter to UNUM dated May 25, 2001, that the Plaintiff also suffered from a "mild, low frequency hearing loss in both ears....It is a little bit worse in the right ear", which is a symptom consistent with Meniere's disease. (UACL 00492, attached.) Plaintiff's medical records also show, that at times when she was experiencing tinnitus, vertigo and dizziness, that she reported a feeling of fullness in her ear(s). (UACL 00527 – UACL 00532, attached.) On three separate occasions, Plaintiff was tested using a tympanogram. (Id.) One test showed -190 mm on the right and -5mm and a previous tested showed -90 mm. (Id.)

Ultimately Plaintiff was diagnosed as suffering Meniere's disease by her treating physician. Additionally, Dr. Glen Miller diagnosed Plaintiff as suffering from Meniere's disease. (UACL 00492, attached) Dr. Miller noted that the low frequency hearing loss in both

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

ears that Plaintiff was suffering from was consistent with Meniere's disease. (Id.) Dr. Miller is

of the medical opinion that Plaintiff is unable to work, due to Meniere's disease. Plaintiff

underwent several tests and procedures to determine the cause of her symptoms. The results of

these tests were negative. Based upon Plaintiff's self-reported symptoms and other symptoms,

Plaintiff was diagnosed with Meniere's disease.

On June 14, 2001, Tara Twitchell reviewed Plaintiff's file and claim for purpose of Life

Waiver. (UACL 00615, attached) The result of said review was that Ms. Twitchell

recommended that Plaintiff's claim be approved for six (6) months. (Id.) The recommendation

was based upon the fact that FCE and AP completed in May 2001, indicated that the Plaintiff

was still experiencing significant difficulties with concentration and memory. (Id.) Plaintiff's

GAF score was 52, and she was still experiencing severe limitations in 5 of 15 areas of

function. (Id.) Ms. Twitchell spoke with an RN, who stated that the Plaintiff lacked substantial

capacity beyond ADL's. (Id.) Ms. Twitchell recommended further follow up, obtaining

updated medicals, and referral of medical records to nueropscyh for further evaluation.(Id.)

Around this same time, Plaintiff's claim, for long term disability benefits, was denied

by UNUM. Plaintiff appealed this decision, and on approximately October 18, 2001, the

decision was overturned to pay and close the file. (UACL 00719, UACL 00720, and Letter to

Plaintiff dated October 18, 2001, all attached.) Plaintiff received benefits through December

31, 2001. (Id.) The file contains a document, number UACL00719, (attached) which states

that the claim needs to be sent for investigation. Under this section, the author/reviewer stated

that the M&N versus physical needs to be addressed. (Id.) Also, the reviewer was uncertain as

to when the primary cause of disability changed from substance abuse to psychiatric illness.

(Id.) It also suggests that if the Plaintiff was undergoing periods of not being sober, not seeking

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

psychiatric help and that she was unable to work as a result of the substance abuse, her M&N months were not exhausted. (Id.) After reviewing the record, it does not seem that UNUM followed up and conducted any investigation, except with regards to Plaintiff's Meniere's disease claim.

Plaintiff's Life Waiver claim was again reviewed on February 12, 2002, by Karen Maples. (UACL 00616, attached) Ms. Maples recommended, based upon an RN review of the previous day, that there was still no significant improvement noted in Plaintiff's condition. (Id.) Ms. Maples stated that it was not unreasonable to recertify for twelve months and follow up Plaintiff on her progress. (Id.)

Due to Plaintiff's disability(ies), Plaintiff has been able to return to work. Under UNUM's Life Insurance and Accidental Death and Dismemberment Insurance Plans, Plaintiff is classified as disabled. (UACL 00609, attached). UNUM's Life Insurance Company found satisfactory proof that Plaintiff had shown satisfactory proof of her "continued total disability". (Id). Additionally, under Plaintiff's employer's UNUM policies, Plaintiff is currently pursuing a claim for Social Security Disability benefits. UNUM has a referred Plaintiff's claim for SSD benefits to GENEX, to provide Plaintiff assistance in obtaining these benefits, due to her disability(ies). (See letter from J. Lash dated October 3, 2001, and UACL 00481 – UACL 00483, UACL 00502, UACL 00646, all attached.)

II.    PLAINTIFF'S POSITION:

A.    STANDARD OF REVIEW

When a Court has to make a determination of whether or not an individual was wrongfully denied benefits under an ERISA disability benefit plan, the Court must first

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

5

determine which Standard of Review to use.  The determination of which Standard of Review to use is a determination based upon whether or not the plan administrator has discretionary authority to determine benefits.  *Meade v. Pension Appeals and Review Committee, et al.*, 91-3145 (6th District, S.D. Ohio).  The Court must choose from either a de novo standard of review or an arbitrary and capricious standard of review when determine a denial of claims under ERISA §1132(a)(1)(B).

The Court will use a de novo standard of review when a denial of benefits [is] challenged under §1132(a)(1)(B), unless the administrator or fiduciary of the benefit plan is given discretionary authority to determine eligibility or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch* 489 U.S. 101 (1989).  *See also, Meade v. Pension Appeals and Review Committee, et al.*  (6th Circuit, S.D. Ohio); and *Tiemeyer v. Community Mutual Insurance Company*, 8 F.3d 1094 (1992, 6th Circuit S.D. Ohio). Where the plan administrator or fiduciary has been given the discretionary authority to determine eligibility or construe the terms of the plan, then the Court will use an arbitrary and capricious standard of review.  *Id.*

The appropriate standard of review in this case, is that of arbitrary and capricious.  The LTD Plan which covers the Plaintiff, as submitted by the Defendant to Plaintiff and her Counsel, clearly states that

> You are disabled when UNUM determines that:
> -   you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> -   you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

(LTD-BEN-1 3/1/1997). It is clear that the LTD Plan gives UNUM discretionary duty to determine whether or not the Plaintiff is eligible for long term disability benefits under the LTD Plan. As such, this Court should use the arbitrary and capricious standard of review.

B.    APPLICATION OF THE STANDARD OF REVIEW

When reviewing a denial of disability benefits, under an ERISA benefit plan, the Court must look at the administrator's decision and determine if they are arbitrary and capricious. This Circuit has determined that arbitrary and capricious means that the decision was not rational in light of the plan's provisions. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376 (6th Dist. 1995). When a reasonable explanation is offered for a particular outcome, that is supported by the evidence, then the decision is not arbitrary and capricious. *Williams v. International Paper Co.*, No. 98-6514 (6th Circ., 1998). The arbitrary and capricious standard requires "that the decision 'be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence'". *Killian v. Healthsource Provident Administrators*, No. 97-5574 (6th Cir. 1997) quoting *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). The Court, when making its determination on whether or not the plan administrator's decision was arbitrary and capricious, can only consider the facts known to the plan administrator at the time he or she made the decision. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376 (6th Dist. 1995).

UNUM's decision to deny and discontinue Plaintiff's long term disability benefits was arbitrary and capricious. Defendant, in denying Plaintiff's benefits site to LTD Plan section entitled "WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?". (LTD-BEN-10 3/1/1997 REV, attached.) Under this section, disabilities that are due to a sickness or injury that are primarily based upon self-reported symptoms, and disabilities

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

that are due to mental illness, have a limited period of payment. This limited period of payment is up to twelve (12) months. (Id.) The LTD Plan defines self reported symptoms as "the manifestations of your condition which you tell your doctor, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine". (Id.) The LTD Plan states that examples of self reported systems include, but are not limited to, headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy. (Id.) Lastly, the section defines mental illness as "a psychiatric or psychological condition regardless of cause…". (Id.)

UNUM's decision to deny long term disability claims to the Plaintiff was arbitrary and capricious. In reviewing the Administrative file, UNUM's own claims review personnel seem to disagree with terminating Plaintiff's benefits, based upon her continued difficulties with concentration and memory, which were documented by Plaintiff's treating psychiatrist. Even UNUM's various departments cannot agree, and reach the same conclusion as to Plaintiff's status of disability. Additionally, Plaintiff was having severe difficulty in being able to function in five of the fifteen major areas. UNUM does not deny that Plaintiff is disabled, under the terms of the plan, but rather UNUM states that Plaintiff is only entitled to twelve months of long term disability under the plan. The rational for their determination is that Plaintiff has suffered from a disease which falls within the twelve month maximum benefit period.

UNUM's own employees seem to be confused with regards to what condition(s) Plaintiff's long term disability benefit is processed for. (UACL 00719, attached) Additionally, UNUM has not had the Plaintiff examined by any other source, other than her treating physicians. UNUM has had Plaintiff's medical records examined, by their on staff RN's and

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

8

one physician has discussed the Plaintiff's Meniere's disease over the telephone with Dr. Miller. As the record clearly shows, Plaintiff is suffering from many disabling conditions, some of which are mental, psychiatric, physical or even classified as self-reported under UNUM's policy. Additionally, Plaintiff's claim file is devoid of any information regarding Meniere's disease, how the diagnosis of Meniere's disease is made, or how it is treated. The only reference to how Meniere's disease is treated comes from the Plaintiff's primary care physician's records, which contain the surgical procedures and risk sheets Plaintiff was given by Dr. Miller. (UACL 00587 – UACL 00589, attached.)

There is no indication in the record that the individual(s) reviewing the record have any information or knowledge concerning Meniere's disease. As a matter of fact, Dr. Lee recommend that the file and medical records be reviewed by an ENT for comment. (UACL 00534.) The record contains no information regarding the qualifications of the medical professions who reviewed Plaintiff's claims, upon request of the claimspayer/reviewer. Plaintiff's medical records and file were reviewed by several RN's and Dr. Lee, who is an Internist. (Id.) Nowhere in the file does it list any of the RN's qualifications or Dr. Lee's, or their knowledge, if any, of Meniere's disease. These individuals are basing their information and opinion off of one telephone call Dr. Lee had with Dr. Miller, Plaintiff's treating physician.

III.    CONCLUSION

Under the arbitrary and capricious standard that this Court must use in determining whether or not the denial of Plaintiff's claims was appropriate by the plan administrator, this Court can not uphold the decision of UNUM. Plaintiff's long term disability benefits were

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

9

arbitrarily and capriciously denied.  The decision of the plan administrator can not be construed as showing a deliberate reasoning process.  The decision cannot even be supported by the evidence in the file.  Defendant's own claimpayers/reviewers and even RN's recommended, as of February 2, 2002, that Plaintiff's claim be recertified, for purpose of the Life Waiver. UNUM's own employees are not certain when Plaintiff's disability changed, or why.  There is even evidence that one of the claim payers/reviewers believes that Plaintiff may be entitled to additional time under the M&N, due to her chemical dependency.  Despite the recommendations of UNUM's employees, the plan administrator arbitrarily and capriciously denied Plaintiff's long term disability benefits.

Respectfully submitted:

Richard B. Reiling (#0066118)
Walsh & Reiling
111 West First Street, Suite 1000
Dayton, Ohio 45402
(937) 222-1148
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Brief of Plaintiff was served upon Counsel for the Defendant, Bret K. Bacon and Michael J. Holleran, Frantz Ward LLP, 55 Public Square Building, 19th Floor, Cleveland, Ohio 44113, this ___ day of February, 2003, ~~by Regular~~ U.S. Mail, postage prepaid.

Richard B. Reiling (#0066118)

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

FILED

FEB 19 2003

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **MARGARET ALLEN** | * | **CASE NO. C-1-02-412** |
| **Plaintiff** | * | |
| | * | **Judge Weber** |
| | | **Magistrate Judge Sherman** |
| -vs- | * | |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | * | |
| | * | |
| **Defendant** | | |

---

## REPLY MEMORANDUM OF PLAINTIFF MARGARET ALLEN

---

Now comes Plaintiff, MARGARET ALLEN, by and through the undersigned counsel, and for her reply to Defendant Unum Life Insurance Company of America's ("Defendant") Motion for Judgment on the Administrative Record, Status and Orders as follows:

### **MEMORANDUM**

In support of Defendant's subject motion, Defendant raises the following arguments:

"(1)    To the extent Plaintiff's claim of continued disability was based on a psychiatric condition, Plaintiff had already received the maximum benefits allowed under the policy for such disabilities;

(2)    To the extent that Plaintiff's claim of continued disability was based on her self-reported symptoms of dizziness and unsteadiness resulting from Meniere's Disease (a) Plaintiff was not under the regular care of a physician for such condition, as required under the policy,

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

# EXHIBIT "B"

and (b) did not present sufficient evidence of restrictions and limitations based on her claimed physical condition that would preclude Plaintiff from performing the duties of her occupation."

For the reasons set forth in Plaintiff's brief previously filed with this court, and highlighted herein, it is clear that the aforesaid conclusions of Defendant are inconsistent with the medical evidence submitted and Defendant's own previous determinations. Specifically, Plaintiff asks this court to consider the following:

A.    DR. MILLER'S DIAGNOSIS OF MENIERE'S DISEASE IS SUPPORTED BY CREDIBLE, OBJECTIVE MEDICAL EVIDENCE.

On or about May 25, 2001, Gale W. Miller M.D. noted as follows:

"Miss Allen is a patient who came in with a history of dizziness and balance problems. These had been present for several months when she was first seen in this office in March 2001. The dizziness is an unsteadiness which occurs daily, and she also has spinning which occurs daily. It will last 10-15 seconds; however, the unsteadiness will continue most of the day. She has difficulty with position change such as looking up, rolling over and looking down. She has loud ringing in her right ear and fullness in her right ear.

Examination of her head and neck is unremarkable. She has a mild, low frequency hearing loss in both ears which is consistent with Meniere's Disease. It is a little bit worse in the right ear.

We are in the process of evaluating her and treating her. She has not had a relief in symptoms with the standard treatment for Meniere's Disease, including a low salt diet and a diuretic. There is a chance at some point that she will need to undergo surgery on her right ear.

At this time I consider her totally and permanently disabled."[1]

Additionally, Dr. Miller confirmed his findings in a letter to Unum of August 6, 2001 (CL-00827) and his report of January 9, 2002 (CL-00743).

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

1. This letter, a copy of which was attached to Plaintiff's brief was originally marked by Defendant as UALL 00492. This letter does not, for some reason, appear in the "Administrative Record" supplied by Defendant. In regards to other documents referred to herein, to the extent that these documents were provided by Defendant, reference is made to specific page numbers assigned by Defendant, in the Administrative Record.

Based on the documentation contained in the Administrative Record, it appears that Defendant has already agreed that Plaintiff is suffering from Meniere's Disease. Specifically, Defendant conducted a clinical review on February 22, 2002 in which Defendant confirmed that the diagnosis of Meniere's Disease was clinically supported. (CL-00733). Further, this report indicated that as a result of this disease, Plaintiff was severely limited in several areas of functioning. Id. As a result of this report, it was determined by Defendant that it had received "satisfactory proof" of Defendant's "continued total disability". (CL-00732). Defendant there-fore agreed to waive Plaintiff's obligation to make premium payments on Plaintiff's life insurance policy. Id.

Defendant's findings of February 11, 2002 are consistent with Defendant's earlier findings of September 27, 2001. During the ongoing investigation of Plaintiff's claim, Defendant's "appeals specialist", April A. Atkinson, asked Defendant's "clinical resource department" to review the medical evidence in the file to determine whether the diagnosis of Meniere's Disease was adequately supported. Based on Ms. Atkinson's review of the file, Defendant's representative, Ann Pidgeon, R.N., concluded as follows:

> "Yes. The [Plaintiff] meets the criteria for classic Meniere's Disease (i.e., episodic dizziness, low freq. sensorineural hearing loss, ear pressure, tinnitus, negative diagnosis)." (CL-00804).

Further, Ms. Pidgeon was asked to answer the following question:

> "As dizziness and vertigo can be subjective complaints, please assess the medical information from the perspective of adequacy, consistency, and credibility. Are the claimant's complaint (sic) credible? And consistent"." (CL-00805)

In response to this question, Ms. Pidgeon indicated that Plaintiff's symptoms were in fact "consistent with the clinical findings (low freq. sensorineural hearing loss, negative diagnosis)". (CL-00805) Further, Ms. Pidgeon indicated that Plaintiff was receiving appro-

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

3

priate care for her condition. (Id.) Indeed, Ms. Pidgeon noted that more intense treatment might be warranted given the severity of the symptoms reported. (Id.)[2]

      B.    THE MEDICAL EVIDENCE SUPPORTS THE FACT THAT PLAINTIFF'S CONDITION IS SEVERE AND DEBILITATING.

As Dr. Miller notes in his May 25, 2001 letter, Plaintiff suffers from dizziness, balance problems, severe unsteadiness, and spinning. These conditions cause Plaintiff difficulty with position changes such as looking up, rolling over, and looking down. Additionally, as Dr. Miller notes, Plaintiff suffers a loud ringing in her right ear and fullness in the left ear.

It does not require an active imagination to see how the above conditions would make it nearly impossible for Plaintiff to perform the essential functions of her job as a business analyst who regularly utilizes a computer and needs to be able to concentrate to complete her day-to-day tasks. Given the fact that Defendant has acknowledged that these conditions exist, Plaintiff is unable to see how Defendant has concluded that Plaintiff is able to perform the essential functions of her previous employment. Defendant's position is all the more puzzling due to the fact that its life branch has determined that these conditions render Plaintiff totally disabled. In fact, Defendant has gone so far as hiring attorneys (Genex) to represent to the Federal Government that Plaintiff is totally disabled for social security purposes. Further, Defendant is unable to point to any independent medical examination of Plaintiff to support its position as it did not bother to request that one be performed.

Given the aforesaid conditions, that the parties agree Plaintiff is suffering, and given the complete lack of medical evidence to the contrary, it is clear that Dr. Miller correctly determined that Plaintiff was totally disabled within the meaning of the subject policy.

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

[2]  On October 1, 2001, Maureen J. Lee, D.O., an internist in the employ of Defendant, concurred with Ms. Pidgeon's conclusions. (CL-00805).

C.    DR. MILLER DID "REGULARLY" TREAT PLAINTIFF.

In its motion, Defendant argues that Plaintiff was not under the regular care of a medical provider as required by the policy. A review, however, of Defendant's own record reveals that this is not true. This court need look no further than the records of Dr. Miller to demonstrate that he treated and consulted with Plaintiff on at least fifteen (15) separate occasions in 2001. See CL-00744 – 00747. Further, the records made it clear that Dr. Miller ordered a battery of tests on Plaintiff, and continued his treatment into 2002. Id.

Given this documentation, Defendant's contention that Plaintiff was not under the regular care of Dr. Miller is likewise without merit.

D.    DEFENDANT'S DECISION TO DENY PLAINTIFF CONTINUED BENEFITS WAS ARBITRARY AND CAPRICIOUS.

The parties agree that the appropriate standard of review is whether the decision of Defendant was arbitrary and capricious. See *Yeager v. Reliance Standard Life Ins. Co.*, 88 F. 3d 376 (6th Dist. 1995). The arbitrary and capricious standard requires "that the decision be upheld if it is the result of a deliberate principled reasoning process, and is supported by substantial evidence. *Killian v. Health Source Provident Administrators*, No. 97-5574 (6th Cir. 1997).

In this case it is difficult to point to any "substantial" evidence that Defendant relied on. Indeed, Defendant's own findings support Plaintiff's claims. Further, Defendant's life branch and attorney (Genex) support the fact that Plaintiff is totally disabled. Plaintiff does not doubt that Defendant made a deliberate decision to terminate Plaintiff's benefits, but is was hardly a "principled" one.

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

## CONCLUSION

Based on the foregoing, Plaintiff respectfully suggests that the subject decision of the Defendant is arbitrary and capricious.

Respectfully submitted:

RICHARD B. REILING  (#0066118)
Walsh & Reiling
111 West First St., Suite 1000
Dayton, OH 45402
(937) 222-1148
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply Memorandum of Plaintiff has been served upon Brett K. Bacon, and Michael J. Holleran, attorneys for Defendant, at 55 Public Square Building, 19th floor, Cleveland, OH 44113-1937, by First Class U.S. Mail, postage prepaid, this _____ day of February 2003.

RICHARD B. REILING  (#0066118)
Attorney at law

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

C:\My Documents\RBR\A\Allen\Reply Memorandum.doc

6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

MARGARET ALLEN

~~FILED~~ CASE NO. C-1-02-412

     **Plaintiff**

JUL ₁ 8 *2003    **Judge Weber**
                **Magistrate Judge Timothy S. Hogan**

-vs-         KENNETH J. MURPHY, Clerk
                 CINCINNATI, OHIO

UNUM LIFE INSURANCE
COMPANY OF AMERICA

     **Defendant**

---

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## JUDGMENT IN FAVOR OF PLAINTIFF

---

Now comes Plaintiff, MARGARET I. ALLEN, by leave of court, and for her Supplemental Memorandum in Support of Judgment in Favor of Plaintiff states and avers as follows:

## **MEMORANDUM**

I.    <u>INTRODUCTION</u>

As noted during the course of the oral argument conducted herein, Plaintiff Margaret I. Allen ("Plaintiff") has recently received verification that her application for social security disability insurance benefits has been approved. A true copy of the April 25, 2003 decision of the Social Security Administration is attached herewith.[1] As further noted, it is Plaintiff's position that Defendant is now estopped from claiming that Plaintiff is not disabled on the basis of Meniere's disease under the terms of the subject policy. Specifically, Plaintiff contends that

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

[1]  A copy of this decision was provided to counsel for Defendant during the course of the oral argument held on June 10, 2003.

*EXHIBIT "C"*

Defendant, by and through its subsidiary, Genex Services, Inc. ("Genex"), has represented to

the federal government that Plaintiff is in fact totally disabled on the basis of this disease and

therefore must be precluded in this action from staking out a different position.  Plaintiff

therefore submits that she is entitled to judgment in her favor on the basis of judicial estoppel.

In the alternative, Plaintiff suggests that Defendant's representations to the Social Security

Administration casts additional doubt on the adequacy of its evaluation of Plaintiff's claim, and

provides further evidence of the arbitrary nature of its eventual denial of the same.


II.      STATEMENT OF RELEVANT FACTS

          On or about July 11, 2000 Defendant forwarded written notification to Plaintiff that her

request for Unum disability benefits had been approved.  As a part of that letter, Defendant

likewise provided detailed instructions in connection with Plaintiff's obligation to apply for

Social Security Disability Insurance benefits ("SSDI").  Specifically, Defendant stated as

follows:

"Since your disability has extended beyond five months, you must apply for Social Security
Disability Insurance (SSDI) benefits.  Enclosed please find information on some of the advan-
tages that you will receive if approved for SSDI benefits.  Note that these advantages make it
worth applying even if you are able to return to work after a relatively short period of receiving
SSDI benefits.  If you are awarded SSDI benefits, your Unum benefit will be reduced by the
amount of your monthly SSDI benefit.

Your policy provides that an estimated amount of SSDI benefits may be deducted from your
Unum benefit commencing on the first of the month following five full months of disability.
However, realizing that this may place you in financial hardship, Unum is willing to provide
you with a full disability benefit until SSA approves your claim, provided that you agree to
repay Unum in full for any monies advanced to you while your SSDI claim is being evaluated.
You may choose how your claim is administered by completing the enclosed Disability Pay-
ment Option form.

Please return the Payment Option form within thirty (30) days of the date of this letter to indi-
cate how you want us to administer your disability benefit while your Social Security applica-
tion is pending.  If you do not return the Payment Option form, and do not provide us with
proof of application for SSDI benefits, we will administer your claim according to Option #1

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

2

(deducting estimated SSDI benefits). If your SSDI claim is denied and you have appealed your claim to the level required under your policy, Unum will reimburse you for the estimated amount that has been deducted. You must provide us with proof of denial and decision on appeal.

Also enclosed is a Social Security authorization for release of information form. Please complete and return it along with the payment option form mentioned above. The purpose of this form is to help Unum expedite and obtain information regarding your Social Security benefits directly from your local office. You should be aware that it is rare for someone to have SSDI benefits approved on their initial application. Whatever decision SSA makes, it is important that you advise Unum immediately. Depending on your specific medical and vocational situation, there may or may not be merit in appealing your SSDI claim. We can advise you on how to proceed. Each case is different and will be evaluated individually under Unum's Social Security Claimant Advocacy Program (SSCAP) to assess how best to assist you.

If you have not yet done so, you can initiate your SSDI claim by calling the Social Security Administration at its toll free number (800) SSA-1213. Please be sure to obtain a Receipt for Application, once your claim has been filed, and send a copy of that receipt to Unum. This serves as proof that you have filed your SSDI claim.

In addition to its use for applying for benefits, the Social Security toll free number can also be used to request information about your application, to request a benefit estimate, to inquire about lost checks, or to make virtually any other Social Security inquiry. Please make a note of that number for future use." (See letter of July 11, 2000 attached herewith).

     In accordance with Defendant's demands, Plaintiff filed for SSDI benefits. Plaintiff's

initial request was denied. Following the denial, Defendant became directly involved in the

prosecution of Plaintiff's claim. A timeline of the sequence of events is as follows:

February 1, 2001:  Defendant's representative, Jennifer Agger ("Agger") contacted Plaintiff in

connection with the status of her SSDI claim. At this time, Plaintiff informed her that her claim

for SSDI benefits had been denied. It was thereafter suggested that Plaintiff be referred to

Defendant's Genex program[2] "for assistance in (Plaintiff's) appeal". Ms. Agger represented

that as soon as Plaintiff sent her the "denial letter" that Defendant would refer the matter to

Genex. (CL-00011).

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

**February 5, 2001**: Ms. Agger completes a "Social Security Disability Referral" form and forwards the same to Genex.

**February 14, 2001**: Emily McLaughlin of Genex forwards a letter to Ms. Agger accepting Plaintiff's case. Ms. McLaughlin likewise assures Ms. Agger that Genex would, during its initial contact with Plaintiff, address "in detail (Plaintiff's) responsibility to re-pay any over-payment to Unum Provident (Potland) if appropriate". Further, Ms. Agger indicated that Genex would "notify (Defendant) regularly as to the status of the claim".

**February 19, 2001**: At the request of Genex, Plaintiff executed a Medical Release authorizing Genex to obtain Plaintiff's medical records. SSA #14F-3.

Plaintiff further executed and returned a "Third Party Fee Agreement with Waiver of Direct Payment". Pursuant to the terms of the Fee Agreement, Defendant "agreed to pay" for the services rendered by Genex. See Third Party Fee Agreement attached to the Appendix herewith. On this date, Plaintiff likewise signed an "Appointment of Representative" form (SSA-1696-U4) authorizing Genex to represent her. A copy of this form is attached as part of the Appendix.

**February 26, 2001**: An attorney[3], and employee of Genex, named Kellie Lee executed the aforesaid form SSA-1696-U4 as Plaintiff's representative. Ms. Lee likewise waived direct

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

[2]  Ms. Agger refers to the Genex Social Security Disability Program as "our Genex program" in her 2/1/01 notes.
[3]  It is interesting to note that despite Defendant's representations to the contrary in the case presently at bar, Ms. Lee was an attorney. The attached Acceptance of Appointment form makes this clear as Ms. Lee checked the box entitled "I am an attorney" in Part II of the form.

payment on behalf of Genex. See attached Form SSA-1696-U4. On this date, Genex likewise sent the first of several reports to Defendant advising Defendant of the status of the claim. CL-00237.

March 15, 2001: Genex forwarded a completed "Request for Reconsideration" for Plaintiff's signature. On this form, Genex typed that the initial decision of the Social Security Administration was incorrect as Plaintiff "suffer[ed] from severe impairments which prevent[s] (Plaintiff) from engaging in substantial gainful employment". See SSA Exhibit 2B-1. Genex further indicated in an attached "Reconsideration for Disability Report", Form SSA-3441-F6, that Plaintiff suffered from Meniere's disease. SSA Exhibit 4E.

March 26, 2001: Ms. Lee forwarded the above-mentioned Request for Reconsideration, Reconsideration for Disability Report, Appointment of Representation, and Fee Agreement to the Social Security Administration. See attached March 26, 2001 letter to SSA.

May 22, 2001: Ms. Lee forwarded a letter to the Social Security Administration requesting the status of the claim. See attached May 22, 2001 letter to SSA.

June 20, 2001: Genex informed Plaintiff that she would thereafter be represented by Jennifer Lash, also an attorney. See attached June 20, 2001 letter to Plaintiff.

July 30, 2001: Genex provided Defendant with another written update in connection with Plaintiff's SSDI claim. (CL-00221).

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

5

<u>September 18, 2001</u>:  The Social Security Administration rejected Plaintiff's request for reconsideration.  In its notice of reconsideration, the Regional Commissioner notes that the SSA realized that Plaintiff's "condition prevents (Plaintiff) from doing (Plaintiff's) past jobs . . . ".  A copy of this decision is attached herewith as a part of the Appendix.

<u>November 7, 2001</u>:  Genex forwards Dr. Larson's and Dr. Miller's[4] records to the Social Secur-ity Administration in support of Defendant's appeal of the unfavorable reconsideration.  By the same letter, Genex enclosed a request for hearing before an Administrative Law Judge, Form HA-501-U5.  See SSA Exhibit 4B; letter of November 7, 2001 to SSA.  On the request for hearing, Genex represented that once again Plaintiff suffered "from severe impairments which prevent (Plaintiff) from engaging in substantial gainful employment".  SSA Exhibit 4B at #5.

Additionally, on November 7, 2001, Genex sent another update of the progress of Plaintiff's claim to Defendant.  A copy of said "case update" is attached herewith as part of the Appendix.

<u>February 11, 2002</u>:  Genex sent to the office of Hearings and Appeals a three-page report from Dr. Miller in support of Plaintiff's claim.  By way of this report, Dr. Miller indicated that Plaintiff had the following impairments on the basis of dizziness caused by Meniere's disease:

    (a)   difficulty in lifting / carrying;

    (b)   difficulty standing / walking;

    (c)   occasional difficulty balancing, stooping, crouching, and kneeling; and

    (d)   inability to climb, reaching handles, feeling, pushing / pulling, seeing, hearing, and speaking.

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

6

Dr. Miller likewise indicated that her condition placed the following environmental restrictions on Plaintiff: heights, moving machinery, temperature extremes, noise, fumes, humidity, and vibrations. Dr. Miller further submitted that his findings were in accordance with his objective and treatment of Plaintiff. See SSA Exhibit 34F 2/3.

May 21, 2002: Genex provided another "case update" to Defendant indicating that Genex was continuing to submit medical records in support of Plaintiff's claim. CL-00087.

November 5, 2002: Genex requested to speak with Plaintiff in order to prepare her for her hearing scheduled on December 11, 2002. See letter of November 5, 2002 attached herewith.

November 12, 2002: Genex requested additional documentation from Dr. Larson to support Plaintiff's claim. See letter of November 12, 2002 from Jennifer M. Lash to Dr. Larson, attached herewith.

February 4, 2003: At Plaintiff's request, Genex withdraws from representation of Plaintiff. See February 4, 2003 letter from Jennifer M. Lash to Plaintiff.

April 16, 2003: A hearing was held before the Social Security Administration. See Decision of April 25, 2003 at p. 1.

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

[4]  A review of the Social Security file indicates that these records are the same records that contain the same conclusions that Defendant now takes exception to.

<u>April 25, 2003</u>:  The Social Security Administration issued a decision which indicated that Plaintiff was in fact disabled as defined by 20 CFR § 404.1530(d) and therefore entitled to compensation.

II.    ARGUMENT

On March 8, 2002 the Defendant issued a four-page decision denying Plaintiff's long term benefit claim.  From a review of this letter, it appears that Defendant bases its denial on two primary factors:  (1) that Plaintiff is "not receiving the most appropriate care" for Plaintiff's condition; and (2) that Defendant was "unable to substantiate restrictions and limitations that would preclude (Plaintiff) from performing (Plaintiff's) own occupation".  Id. at p. 4.  A review of the briefs filed by Defendant in this case indicate that Defendant's position has not changed, at least before this court.

As Plaintiff stated at the oral argument herein, it is Plaintiff's position that the facts in this case are similar to those that confronted the 7th Circuit Court of Appeals in *Ladd v. ITT Corp.*, 148 F. 3d 753 (7th Cir. 1998).  In *Ladd*, Rebecca Ladd brought suit to overturn the denial of her disability benefits pursuant to an employee welfare plan sponsored by her employer, ITT, and administered by MetLife.  Prior to denying her claim, MetLife encouraged Ms. Ladd to apply for social security disability benefits.  MetLife likewise provided her with legal representation to assist her with the application.  After a hearing, an administrative law judge found that Ms. Ladd was in fact totally disabled and awarded her benefits.

Following the favorable social security determination, MetLife referred Ms. Ladd to a consulting firm that MetLife used on a regular basis to determine whether Ms. Ladd was able to perform work.  On the basis of this review, MetLife determined that she could work a full

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

8

eight-hour day at a sedentary job and therefore subsequently concluded that Ms. Ladd was not eligible for benefits under the terms of the policy.

On the basis of these facts, the 7th Circuit determined that "the denial of Ladd's claim must be adjudged arbitrary, and even irrational". Further, the court in *Ladd* explained that "[t]he grant of social security benefits to *Ladd* has an additional significance. It brings the case within the penumbra of the doctrine of judicial estoppel – that if a party wins a suit on one ground, it can't turn around and in further litigation with the same opponent, repudiate the ground in order to win a further victory". As the court explained, although MetLife and ITT were not technically parties to the proceeding before the Social Security Administration, "they "prevailed" in a practical sense because the grant of social security benefits to Ladd reduced the amount of her claim against the employee welfare plan". The court therefore concluded that if it reflects on the purpose of the doctrine of judicial estoppel "which is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant, (the court) see(s) that its spirit is applicable here". As the court explained, in order to "lighten the cost to the Employee Welfare Plain of Ladd's disability, the defendants encouraged and supported her efforts to demonstrate total disability to the Social Security Administration, going so far as to provide her with legal representation to further lighten that cost, it then turned around and denied that Ladd was totally disabled . . . . . In effect, having won once, the defendants repudiated the basis of their first victory in order to win a second victory".

The facts in the instant case in many ways mirror the facts in *Ladd.* In this case, like in *Ladd,* the Defendant attempted to lighten its costs by obtaining benefits for Plaintiff though Plaintiff's SSDI application. Unlike MetLife, however, Defendant did not only "encourage"

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

9

Plaintiff to file an SSDI claim, it <u>required</u> Plaintiff to do so. Further, Defendant obtained counsel of its own choosing to represent Plaintiff itself, by and through its subsidiary, Genex.

Throughout the pendency of Plaintiff's SSDI case, Defendant likewise prepared the forms submitted to the SSA through which Defendant consistently stating that Plaintiff suffered from Meniere's disease and was prevented from engaging in substantial gainful activity. Perhaps most disturbing, however, in Defendant's March 8, 2002 letter denying Plaintiff's appeal, Defendant claims to base its decision on its alleged inability, due to alleged deficiencies in Dr. Miller's records and "inconsistencies" on the part of Plaintiff, to "substantiate restrictions and limitations that would preclude (Plaintiff) from performing (Plaintiff's) own occupation". (CL-00098). Despite these conclusions, however, Defendant repeatedly submitted Dr. Miller's records, the inaccuracy of which Defendant claims to have determined, to the Social Security Administration to support the proposition that Plaintiff is not only unable to perform the essen-tial functions of her previous job, but <u>any</u> job at all. Additionally, although Defendant claims to disagree with Dr. Miller's conclusions, Defendant asked Dr. Miller to prepare reports verify-ing the fact that Plaintiff was totally disabled, which he subsequently forwarded to the SSA.[5]

Plaintiff would like to believe that at the time Defendant submitted Dr. Miller's records to the SSA, it was doing so in good faith. As this court is aware, Defendant, as Plaintiff's representative before the Social Security Administration, had an affirmative duty to do so. Indeed, pursuant to 42 U.S.C. § 1320a-8(a), Defendant could be subjected to civil penalties for making a false or misleading representation, or omitting a material fact. By continuing to suggest that Dr. Miller's records and diagnosis are inaccurate, Plaintiff is left with but one

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

[5] These records were submitted both before <u>and</u> after Defendant's denial of Plaintiff's appeal.

conclusion – that either Defendant attempted to mislead the Social Security Administration, or is attempting to do so in this case.

Plaintiff continues to have concerns that whatever Defendant's motivations for its inconsistent approach in the prosecution of Plaintiff's SSDI claim, it is just one more inconsistency in a sea of inconsistencies. For example, Plaintiff asks this court to consider the following:

1. Defendant claims, in its March 8, 2002 letter and in its briefs, that Plaintiff is not receiving appropriate treatment. Defendant's own experts, Ann Pidgeon, R.N., and Maureen Lee, D.O., concluded in late 2001 that she was receiving appropriate care. (CL-00805).

2. Defendant claims that Plaintiff's complaints are not credible, but Defendant's own aforesaid experts again disagree and indicate that her complaints are both credible and consistent. Id.

3. Defendant claims that Plaintiff is not prevented by Meniere's disease from performing the essential functions of her job, but submits documentation to the SSA by way of Dr. Miller's report that she is unable to function when dizzy. SSA Exhibit 34F 2/3.

4. Defendant claims that it does not have satisfactory proof of continued disability, and its own life branch determined, on the basis of the same records, that it had received satisfactory proof of continued disability. (CL-00732).

5. Defendants claims that it was justified in reversing its earlier allowance of disability of Meniere's disease although Defendant admits that at the time of the denial, Plaintiff was still suffering from Meniere's disease, still suffering from vertigo and tinitis, and that there was no improvement in her condition. (CL-00733).

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

11

6.      Defendant claims that Plaintiff's claim is based on self-reported symptoms, yet admits in its appeal Decision of October 18, 2001 that the diagnosis was made after testing was completed and supported by the medical evidence[6] provided.  CL-00003.

7.      Defendant disagrees with Dr. Miller's findings at times, but fails to provide a qualified expert of its own to articulate why.  See *Mitchell v. Eastman Kodak Co..* 113 F. 3d 433 (3rd Cir. 1997)(holding that it is not enough to merely argue about the alleged insufficiencies of a treating physician's report); *Sansavera v. E.I. Dupont de Nemours,* 859 F. Supp. 106, 113 (S.D.N.Y. 1994)(holding that it is unreasonable to fail to consult with an expert familiar with a disease that is difficult to diagnosis, prior to denying a claim.  Further holding that it is unreasonable to demand evidence of a specific kind of testing after experts have concluded that no definitive test exists).

Based on the foregoing, Plaintiff submits that Defendant is estopped from denying the accuracy of Dr. Miller's reports and conclusions as it has represented to the Social Security Administration that they are accurate.  In the alternative, Plaintiff offers Defendant's latest inconsistent representations to the SSA as further evidence that Defendant's decision is clearly without reasonable basis.  Plaintiff therefore requests that judgment be issued in her favor.

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

---

[6] Even if there was a lack of objective findings, this fact alone is not sufficient to deny a claim.  See *Rose v. Shalala,* 34 F. 3d (15th Cir. 1994).

Respectfully submitted:

RICHARD B. REILING  (#0066118)
Walsh & Reiling
111 West First St., Suite 1000
Dayton, OH 45402
(937) 222-1148
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Supplemental Memorandum has been served upon Brett K. Bacon, and Michael J. Holleran, attorneys for Defendant, at 55 Public Square Building, 19th floor, Cleveland, OH 44113-1937, by First Class U.S. Mail, postage prepaid, this 18 day of July 2003.

RICHARD B. REILING  (#0066118)
Attorney at Law

Richard B. Reiling
Walsh & Reiling
111 W. First St.
Suite 1000
Dayton, OH 45402
937.222.1148

13

# *AFFIDAVIT*

## STATE OF OHIO: COUNTY OF MONTGOMERY: SS:

Now comes Affiant RICHARD B. REILING, after first being duly cautioned and sworn according to law, deposes and states as follows:

1.      Affiant makes this affidavit on the basis of his personal knowledge;

2.      Affiant further states that a true and accurate copy of the records and exhibits from Plaintiff's hearing/claim before the Social Security Administration are attached herewith;

3.      Affiant further states that true and accurate copies of correspondence from Genex to Defendant, Plaintiff, Plaintiff's treating physicians, and the Social Security Administration are likewise attached herewith;

FURTHER, AFFIANT SAYETH NAUGHT.

Richard B. Reiling

The foregoing was subscribed and sworn to before me, a notary public in and for said state and county, by RICHARD B. REILING, this 18th day of July 2003.

Marilyn Browning
Notary Public

MARILYN J. BROWNING, Notary Public
In and for the State of Ohio
My Commission Expires 10/30/07