NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-3544

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
AUG 05 2005
LEONARD GREEN, Clerk

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 02-412

MARGARET ALLEN,

    Plaintiff-Appellant,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

    Defendant-Appellee.

On Appeal from the
United States District
Court for the Southern
District of Ohio

BEFORE: BOGGS, Chief Judge, and GIBBONS, Circuit Judge; QUIST, District Judge.*

**PER CURIAM.** Plaintiff-Appellant Margaret Allen ("Allen") appeals from the order of the district court granting judgment on the administrative record and denying her claim under the Employee Retirement Income Security Act ("ERISA") § 502, 29 U.S.C. § 1132(a)(1)(B), that UNUM Life Insurance Company of America ("UNUM") wrongfully denied her long-term disability benefits. Allen argues that the district court erred in: (1) rejecting her judicial estoppel argument; and (2) failing to find that UNUM's decision was arbitrary and capricious. For the reasons that follow, we AFFIRM the judgment of the district court.

## I. Background

Margaret Allen, who was born December 6, 1948, worked as a business analyst for Applied Integration Services, Inc. ("AIS"), in Milford, Ohio, from May 1998 until late August 1999. She left work due to depression, anxiety, and chemical dependency problems. She first had symptoms of

---

*The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

Case 1:02-cv-00412-HJW-TSH

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 2

these conditions in September 1998. She first sought treatment in March 1999, and she was hospitalized numerous times.

UNUM provided disability insurance for AIS employees under a policy that became effective in March 1997. Allen was covered by this policy. Due to her leaving work, Allen initially received short-term benefits under the insurance policy. These benefits expired on March 16, 2000. Allen then applied for and received long-term benefits under the policy from March 17, 2000, through March 16, 2001, based on her mental illness. The policy states that "[d]isabilities, due to a sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period of up to 12 months." The policy defines mental illness as

> a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

UNUM's policy also requires, among other things, that a claimant for disability must prove that the claimant is "under the regular care of a doctor." The policy states that a claimant is disabled when

> UNUM determines that:
> – you are limited from performing the material and substantial duties of your regular occupation due to sickness or injury; and
> – you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

In notifying Allen of the approval of her twelve-month mental illness benefits in July 2000, UNUM also informed her that she must apply for Social Security Disability Insurance (SSDI) benefits, since her disability had extended beyond five months. UNUM noted that its benefits to Allen would be reduced by any SSDI benefits awarded.

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 3

Allen was rejected twice for SSDI benefits and, upon her request, UNUM referred her to Genex, a company that pursues SSDI appeals for applicants.[1] Genex accepted Allen's case, and Allen filled out a medical release form and forms appointing a lawyer working at Genex to act as her representative. UNUM paid for Genex's services. In March 2001, Genex submitted a request for reconsideration to the Social Security Administration ("SSA") on Allen's behalf. The request was initially rejected, but after an appeal and a number of communications between Genex, Allen, and the SSA, the SSA issued a fully favorable decision to Allen on April 25, 2003, finding that she had been disabled under 20 C.F.R. § 404.1520(d) since August 27, 1999. Specifically, the Administrative Law Judge found that Allen's severe impairments of Meniere's disease,[2] major depression, and alcohol abuse met the requirements of "affective disorders" under the definition of 20 C.F.R. Part 404, app. 1, § 12.04.

Meanwhile, following the expiration of her long-term benefits for mental illness in March 2001, Allen applied for further long-term benefits under the UNUM policy, claiming, for the first time, that she had Meniere's disease and mild bilateral hearing loss. Allen then submitted to UNUM a letter from her physician, Dr. Gale Miller. But UNUM noted in a letter dated July 30, 2001, that Dr. Miller did "not include any treatment notes, diagnostic tests, laboratory tests or any information that supports the opinion of totally disabled." UNUM explained to Allen that UNUM did not

---

[1] Jennifer Agger, a UNUM employee, referred to Genex as "our Genex program" and filled out the referral form on February 5, 2001. She noted that Allen "strongly asked for this service."

[2] Meniere's disease is a recurring condition with the symptoms of hearing loss, tinnitus, dizziness, and nausea.

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 4

"question[] that you continue to be disabled, but rather that your continued disability is due to your psychiatric symptoms and not due to a physical condition."

Nevertheless, UNUM eventually discussed Allen's symptoms with Dr. Miller and decided in October 2001 to award her further benefits, covering March 17, 2001, through December 31, 2001, based on Allen's "severe symptomatology of dizziness." UNUM's letter stated that this represented the "final benefit payable" on her claim. These benefits were intended to cover the period indicated for a surgical procedure recommended by Dr. Miller to treat Allen's Meniere's disease. However, Allen informed UNUM that she would not be proceeding with the surgery, first because she had to travel to Florida to assist her mother and then because of the possible complications of the surgery.

On January 28, 2002, Allen appealed the termination of her benefits. She also forwarded her most recent medical records to UNUM. On March 8, 2002, April Atkinson, Lead Appeals Specialist for UNUM, notified Allen that, after reviewing the denial of long-term benefits, UNUM had determined that its decision to deny benefits was appropriate. Atkinson noted that Allen's "reported activities," such as traveling and driving, were inconsistent with her "subjective complaints" of depression and anxiety. Atkinson also pointed out that, according to the records provided by Allen, Allen did not appear to have received any medical care from August 2001 through early 2002.

On June 7, 2002, Allen filed a complaint against UNUM pursuant to 29 U.S.C. § 1132(a), alleging that UNUM wrongfully denied her long-term disability benefits. After an extensive administrative record was entered, UNUM moved for judgment on the administrative record on February 7, 2003. The magistrate judge issued a report and recommendation, recommending that

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 5

the motion be granted. Allen objected to the report, but on March 25, 2004, the district court adopted the report and recommendation. This appeal followed.

## II. Discussion

**A.   Did the district court err in rejecting Allen's judicial estoppel argument?**

Allen's primary argument on appeal is that the district court erred by rejecting her judicial estoppel argument below. This court reviews *de novo* a lower court's resolution of a judicial estoppel argument, as it is a question of law. *See Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). The basic argument is that Genex's vigorous pursuit of Allen's case for SSDI, partly on the basis that Allen is disabled with Meniere's disease, was made on behalf of and with the financial backing of UNUM. Therefore, Allen argues, UNUM's position in the present case that Allen is not disabled due to Meniere's disease is inconsistent with its previous position in another proceeding. UNUM, the argument goes, should thus be estopped from discrediting, for example, Dr. Miller's reports diagnosing Allen with Meniere's disease as a reason for denying Allen's long-term benefits under her insurance policy.

> Judicial estoppel is a doctrine that
>
> > where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citation omitted); *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217 (6th Cir. 1990) ("The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 6

asserted by the same party in a prior proceeding.") (internal quotation marks and citation omitted).

The doctrine is

> an equitable doctrine to be applied in a court's discretion, considering such factors as whether a party's later position is "clearly inconsistent" with its earlier position, whether acceptance of a party's later position would create the perception that "either the first or the second court was misled," and whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Bullard v. Alcan Aluminum Corp.*, 113 F. App'x 684, 689 (6th Cir. 2004) (quoting *New Hampshire*, 532 U.S. at 750-51); *see also Teledyne Indus.*, 911 F.2d at 1218 ("In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court.").

Allen's judicial estoppel argument has no merit. First, Allen does not cite any authority to support her contention that Genex's submission of medical records relating to Allen's treatment for Meniere's disease to the SSA constitutes a "position in a prior proceeding," much less an affirmation under oath, for purposes of the judicial estoppel doctrine. After all, UNUM did not itself make these representations to the SSA; it only paid for Genex's services, which were voluntarily requested by Allen. Also, neither Genex nor UNUM ever represented to the SSA that Meniere's disease constituted the only or even the primary impairment suffered by Allen. In fact, in the SSA's ultimate favorable opinion, the ALJ explicitly stated that Allen's mental impairments of depression and anxiety were of "greater significance" than her Meniere's disease. This analysis is consistent with UNUM's current position that: (1) Allen had a mental disability; (2) under its policy, long-term benefits for mental illnesses are limited to 12 months; and (3) Allen received those benefits already.

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 7

As she did below, Allen relies on *Ladd v. ITT Corp.*, 148 F.3d 753 (7th Cir. 1998), in support of her judicial estoppel argument. In *Ladd*, the plaintiff appealed the denial of benefits under her employer's health plan. Three doctors who treated her found her to be totally disabled, as did an ALJ, but a doctor retained by the plan administrator concluded in a perfunctory report that Ladd had sufficient "residual functional capacities" to work in a sedentary job. *Id* at 754-55. The Seventh Circuit held that the denial of Ladd's claim was arbitrary because the plan's doctor did not give any reason for disagreeing with the assessments of the other doctors. *Id.* at 755-56. In dicta, the court noted that the principle of judicial estoppel also supported its conclusion, since the defendants had supported Ladd's "effort to demonstrate total disability to the Social Security Administration." *Id.* at 756. However, the Seventh Circuit made clear that it was not relying on the judicial estoppel argument in finding the denial of Ladd's claim to be arbitrary. *See id.* (noting that the sequencing of defendants' support of Ladd's pursuit of social security benefits and their subsequent denial of plan benefits "cast[] additional doubt on the adequacy of their evaluation of Ladd's claim, *even if it does not provide an independent basis for rejecting that evaluation*") (emphasis added).

Assuming, *arguendo*, that *Ladd* governs the present case (which it does not), and that *Ladd* held that judicial estoppel could prevent an employer from endorsing the evidence put forth by a social security claimant while denying plan benefits based on that same evidence (which it did not), *Ladd* is still distinguishable on the facts. Unlike the present case, *Ladd* did not involve a policy limitation based on a particular type of illness, under which the claimant had already received full benefits. Moreover, while the *Ladd* court held that the disability standards under the particular ERISA plan at issue were the same as the relevant standards under the social security program, *see*

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 8

*id.* at 754, this would not always be the case, and Allen does not allege it is the case here. Obviously, UNUM's plan, which limits benefits for mental illnesses to twelve months and sets forth its own definition of mental illness, differs from the social security regime governing mental illnesses. In fact, a later Seventh Circuit opinion, authored by the same judge who authored *Ladd*, explicitly held that *Ladd* does not apply in these situations:

> [T]he fact that Standard supported Herzberger's application for social security disability benefits does not estop it to deny that she was disabled within the meaning of [Standard's insurance] policy, *cf. Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998), since Standard did not take inconsistent positions. It consistently conceded that she was disabled, but argued--what was relevant only to Herzberger's rights under the plan, and not to her rights to social security disability benefits--that her disability was due to a mental disorder.

*Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 333 (7th Cir. 2000); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) ("[E]mployers have large leeway to design disability and other welfare plans as they see fit. In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria. The validity of a claim to benefits under an ERISA plan, on the other hand, is likely to turn, in large part, on the interpretation of terms in the plan at issue.") (internal quotation marks and citation omitted).

In sum, the district court did not err in rejecting Allen's judicial estoppel argument. Therefore, we affirm the district court on this issue.

**B.    Was UNUM's decision to deny Allen long-term benefits arbitrary and capricious?**

Allen also argues on appeal that the trial court erred by failing to find that UNUM's decision to deny Allen long-term benefits was arbitrary and capricious. The decision of a district court in an

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 9

ERISA benefits case is usually reviewed *de novo*. *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002). However, when a policy gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a court reviewing the plan administrator's decision should apply the arbitrary and capricious standard of review. *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003). There is no dispute that the arbitrary and capricious standard applies in this case.

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). In making its determination, the court must decide whether the plan administrator's action was "rational in light of the plan's provisions." *Id.* (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). If it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious. *McDonald*, 347 F.3d at 169. Finally, in making its determination, the court is confined to reviewing only those materials known to the administrator at the time the decision was made, "and not any depositions, affidavits, or similar litigation-related materials that the parties submitted to the District Court." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 n. 2 (6th Cir. 2000); *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433-34 (6th Cir. 1998).

Allen identifies two ways in which UNUM's decision was arbitrary and capricious: (1) UNUM disregarded medical reports indicating that Allen was totally disabled due to her Meniere's disease; and (2) UNUM erred in finding that Allen was not under the regular care of a medical provider. These arguments are unavailing. There are numerous items in the record that support UNUM's determination that Allen was not entitled to long-term benefits under its policy. For

instance, the diagnosis of Meniere's disease was based only on Allen's self-reported subjective symptoms of ringing in her ears, hearing loss, dizziness, nausea, and "misjudgment," not any objective, clinical testing. Dr. Miller confirmed this, and none of the other reports submitted by Allen contained objective evidence of a physical ailment. A physician evaluating Allen's case for UNUM noted that although the complaints of dizziness and other symptoms giving rise to a diagnosis of Meniere's disease "support[ed] some restrictions regarding episodic dizziness . . . the data does not support total loss of capacity." The report went on to note that the "level of treatment [being received by Allen]...is not consistent with the severity of symptoms reported."

In addition, the record indicates that Allen did not seek regular care or consultations from Dr. Miller or anyone else from September 2001 to January 2002. As UNUM states in its letter notifying Allen that her claim had been denied, this suggests that Allen did not meet the policy requirement of showing "regular" medical care. UNUM concluded that if Allen were indeed suffering from symptoms that were severe enough to affect her capacity to work, she would be seen "at least monthly."

Furthermore, as outlined by UNUM in its March 8, 2002, letter to Allen, Allen's "reported activities," such as traveling, were inconsistent with her "subjective complaints" of depression and anxiety. Allen, herself, informed UNUM that, as of February 2002, she was engaging in "minimal, light housekeeping, light cooking, . . . some walking and light exercise to stay in shape." She also indicated that she was driving, despite the fact that Dr. Miller instructed her not to drive. Moreover, Allen informed UNUM that she would not be proceeding with the surgery that was recommended by Dr. Miller (and that also served as the basis for UNUM's payment of benefits covering March to December 2001), first because she had to travel to Florida to assist her mother and then because of

No. 04-3544
*Allen v. UNUM Life Ins. Co.*
Page 11

the possible complications of the surgery. Since Allen failed to have the surgery and also failed to provide even a consistent explanation as to why she decided not to have it, UNUM reasonably determined that Allen's behavior belied her subjective complaints.

Again, in reviewing the plan administrator's decision, the court must decide whether the plan administrator's action was "rational in light of the plan's provisions." *Williams*, 227 F.3d at 712 (quoting *Daniel*, 839 F.2d at 267). Here, in light of the policy's provisions, especially those on the need to show regular medical care, UNUM's decision was rational. UNUM did not act arbitrarily or capriciously in denying Allen long-term benefits.

### III. Conclusion

Accordingly, the district court's judgment is **AFFIRMED**.